IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIE M. B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 19-cv-894-RJD[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM and ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in June 2016, alleging a disability onset date of April 24, 2016. After holding an evidentiary hearing, an ALJ denied the application on October 2, 2018. (Tr. 22-30). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Issue Raised by Plaintiff

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 12, 24.

1

Plaintiff raises the following issue:

1. The ALJ failed to properly evaluate whether she was entitled to a closed period of disability.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d

535, 539 (7th Cir. 2003).   The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above.  He determined that plaintiff had not worked at the level of substantial gainful activity since the original alleged onset date except for the third quarter of 2017.   She was insured for DIB through September 30, 2020.  The ALJ found that plaintiff had severe impairments of status post motor vehicle accident with multiple injuries including cervical and thoracic spine fractures resulting in fusion from C6 to T5, multiple rib fractures, respiratory failure, tracheal stenosis, subglottic stenosis, hepatic encephalopathy, and ventral incisional hernia; and peripheral neuropathy.

The ALJ found that plaintiff had suffered serious injuries, but that she had not been unable to work for 12 continuous months.   He found that she had the RFC to do a limited range of work at the light exertional level.  Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work, but she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this

Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

### 1. Agency Forms

Plaintiff was born in 1968 and was 47 years old on the alleged date of onset. (Tr. 171). She last worked as a tour director for an orchard. That job ended in October 2015 because it was seasonal. She had also worked as a preschool teacher's aide and a school district program assistant. (Tr. 175-176).

In March 2018, plaintiff reported that she had tried to work at Associated Foot Surgery's call center from August through November 2017, but she did not make it past the probation period because of "physical, mental and emotional problems." (Tr. 275). The practice manager of that office submitted a letter stating that plaintiff was unable to retain information, could not remember procedures, became very emotional and cried, struggled with "severe neck and back pain," and required assistance when walking up and down stairs. (Tr. 285).

### 2. Evidentiary Hearing

Plaintiff was not represented by an attorney at the hearing in June 2018. (Tr. 44).

Plaintiff has an associate's degree in early childhood development. She lived with her husband and 17-year-old son. (Tr. 46-47).

In April 2016, plaintiff was driving a small pick-up. She overcompensated when a motorcycle veered into her lane and hit some rock. The pick-up flipped over and she was ejected. She was air-lifted to a hospital. (Tr. 54-55).

Plaintiff testified that she could not work because she could not sit for very long due to pain in her neck and back. She had a 12-inch rod in her spine and had nagging pain. She could not rotate her head. She had a painful spot right behind her right shoulder blade. She had numbness in her hands and feet. She had difficulty remembering things. She could stand for

maybe 20 minutes and could walk for maybe 50 yards.  (Tr. 51-55).

### 3. Relevant Medical Records

Plaintiff was admitted to St. Louis University Hospital on April 24, 2016, following a rollover motor vehicle accident.  She was found unresponsive and was administered CPR and intubated.  She suffered multiple injuries including a chip fracture of C5, fractures of thoracic vertebrae, and multiple rib fractures.  A sternotomy was performed in the emergency department because of possible tamponade (compression of the heart due to fluid build-up).  (Tr. 1425-1428).  An endotracheal tube was placed on May 9, 2016, because of impending respiratory failure.  (Tr. 1251).

Plaintiff was transferred to St. Anthony's Medical Center on May 10, 2016 after she developed respiratory failure and vent associated pneumonia.  (Tr. 534-535).  She was discharged on June 9, 2016, having been weaned off a ventilator.  (Tr. 569-570).

Plaintiff was admitted to St. Louis University Hospital again in August 2016 for tracheal stenosis (narrowing or constriction of the trachea).  A tracheal resection was performed.  She was discharged on August 24, 2016, in improved condition.  (Tr. 1786).

After her discharge, plaintiff was followed by her primary care provider, Dr. Garner, as well as by doctors from St. Louis University.  In September 2016, Dr. Garner noted she was doing "very well" and was walking without a cane.  Her gait and station were normal.  No positive findings were noted on physical exam.  (Tr. 1792-1795).  An orthopedic doctor from St. Louis University saw her in November 2016.  X-rays showed that the spinal hardware was in place and there was no change in alignment.  She walked without an assistive device and was doing well. Her only complaint was pain in the right thumb with extension.  On exam, she had no tenderness to palpation of the neck and her incision was well-healed.  She had full motor strength in the upper and lower extremities and sensation was intact.  She reported no pain and little shoulder stiffness.

5

She was to continue activities as tolerated and return in 6 months. (Tr. 1796-1798).

In December 2016, plaintiff was diagnosed by a St. Louis University doctor with a 4 cm. reducible incisional hernia near her umbilicus. (Tr.1853-1854). She was hospitalized for surgical repair from February 21 through February 24, 2017. A small bowel repair also had to be done because the bowel was adhering to the hernia and was torn during the surgery. At discharge, she was tolerating a regular diet and was ambulating well. Her abdomen was nontender with surgical staples in place at the incision. There was no drainage, but she had mild erythema (redness) near the umbilicus. (Tr. 2019-2020, 2035-2036). At a follow-up visit on February 28, 2017, she said the redness "had improved a lot" and her pain was controlled with medication. On exam, she had no abdominal tenderness and her incision was healing well with no sign of infection. The surgical staples were removed. She was to apply Keflex 2 times a day and follow-up in a week. (Tr. 2159-2162). She was seen on March 7, 2017. There are no indications of any abnormal findings at that visit. (Tr. 2164-2167).

Plaintiff was next seen at St. Louis University Hospital on March 23, 2017, complaining of "severe epigastric pain of hours duration." The doctor noted her history of hepatic cirrhosis and hypertension. A CT scan showed stones in the gallbladder and a stone in the distal common bile duct. An ERCP procedure was done and a stent was placed.[3] Plaintiff tolerated breakfast the next day, felt better and wanted to go home. Exam showed she was in no apparent distress, had no abdominal tenderness, and had full motor strength in the upper and lower extremities. The diagnoses were abdominal pain, choledocholithiasis (gallstones in the bile duct), and hepatic (liver) cirrhosis. She was to see a GI doctor in the outpatient clinic in May for stent removal and

---

[3] "Endoscopic retrograde cholangiopancreatography (ERCP) uses a dye to highlight the bile ducts on X-ray images. A thin, flexible tube (endoscope) with a camera on the end is passed down your throat and into your small intestine. The dye enters the ducts through a small hollow tube (catheter) passed through the endoscope." https://www.mayoclinic.org/ercp-procedure/img-20007655, visited on April 16, 2020.

6

to follow-up for possible gallbladder removal. The doctor preferred to hold off on gallbladder removal because of plaintiff's recent abdominal surgery. (Tr. 2051-2053, 2069).

Plaintiff followed-up with doctors at St. Louis University Hospital on April 12, 2017, noting that her GI team wanted her to have a laparoscopic cholecystectomy before removal of the stent. She was "feeling very well" and her pain was well controlled with occasional Percocet. She was active and had no complaints. (Tr. 2175-2176). The procedure was done on April 25, 2017. At a follow-up visit in May, she was doing well with no complaints and was to follow up as needed. (Tr. 2183-2184).

Dr. Garner saw plaintiff for an annual physical in June 2017. She had no complaints and reported doing well. On exam, she was in no distress and appeared well. Her abdomen was nontender. Gait and station were normal. Musculoskeletal exam was normal. She had no sensory loss. Mood and affect were normal. (Tr. 1918-1910).

## **Analysis**

Disability means "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 CFR § 404.1505. Plaintiff argues that she was unable to do any work for 12 months following her accident, and the ALJ therefore erred in determining that she was not entitled to a closed period of disability. This argument is a tacit recognition that she recovered well enough to do some kind of work after the 12-month period.

The ALJ recognized that plaintiff was seriously injured in the accident on April 24, 2016. However, he concluded that her "complications lessened" in early 2017. He pointed out that she was doing well at the February 28, 2017, appointment following up on her hernia surgery. He noted that she complained of abdominal pain for a day in March and was diagnosed with

7

gallstones. He further noted that, at an exam on April 12, 2017, she was feeling very well, her pain was controlled with Percocet, and she had no complaints. The ALJ concluded that plaintiff was "severely incapacitated for some months after her accident," but that "the evidence does not support a finding that [her] multiple injuries disabled her for 12 continuous months." (Tr. 27-28).

The core of plaintiff's argument is that her gallbladder problems "resulted from her multilevel cervical and thoracic fusion." See, Doc. 20, p. 4. In her view, the ALJ should have determined that she did not recover from the effects of her accident until she recovered from her gallbladder surgery.

Plaintiff's argument is not persuasive. In the first place, it is not supported by the medical records. The medical records do not suggest that her gallbladder problems were related to injuries caused by the accident. The doctor who diagnosed gallstones in March 2017 noted her history of hepatic cirrhosis and hypertension but did not mention her accident or cervical and thoracic fusion. (Tr. 2051-2053).

Plaintiff does not contend that her medical records support her theory that her gallstones were related to her fusion. Rather, she cites a 1987 article from a medical journal. See, Doc. 20, pp. 8-9. That article is entitled "Spinal Cord Injury Is a Risk Factor for Gallstone Disease," available at www.sciencedirect.com/science/article/pii/0016508587909711. That article was not before the ALJ, and, in any event, does not support plaintiff's theory. The article describes a study of patients with spinal cord injuries, but plaintiff suffered vertebral fractures, not a spinal cord injury.

Lacking any evidentiary support for her theory, plaintiff is arguing that the ALJ should have determined for himself that her gallstones were related to her fusion surgery. However, that would be far beyond the ALJ's expertise and would constitute legal error. "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."

8

*Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). Simply put, no doctor connected the two conditions, and it would be error for the ALJ to make the connection himself.

Coming at the same argument from another angle, plaintiff argues that the ALJ should have considered gallbladder disease as a serious impairment at Step 2. Again, she argues "If gallbladder disease stemmed from Plaintiff's motor vehicle accident on April 24, 2016, then her gallbladder surgery on April 26, 2017 constitutes a continuation of her disability for a twelve- (12) month period." See, Doc. 20, p. 9. However, the step 2 determination is only a "threshold issue," and, as long as the ALJ finds at least one severe impairment, he must continue on with the analysis. And, at step 4, he must consider the combined effect of all impairments, severe and non-severe. Therefore, a failure to designate a particular impairment as "severe" at step 2 does not matter to the outcome of the case as long as the ALJ finds that the claimant has at least one severe impairment. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010).

Lastly, plaintiff complains that the ALJ referred to her earnings from employment in the third and fourth quarters of 2017 but did not mention the letter from the practice manager at Associated Foot Surgery about her difficulties doing her job there. That letter does not support her argument. She argues here that she was disabled from April 2016 through April 2017, not that she was disabled in the second half of 2017. Further, the ALJ did not deny her application for the reason that she worked at the level of substantial gainful activity in the third quarter of 2017 and did not find that she could perform the job she did at Associated Foot Surgery. The ALJ was, of course, not required to address every piece of evidence in the record. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). In view of his discussion of the medical evidence, it is highly unlikely that the letter, which was not written by a medical professional, would change the ALJ's decision. The failure to mention the letter was therefore harmless. *McKinzey v. Astrue*, 641 F.3d

884, 892 (7th Cir. 2011).

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence and make a medical judgment that her gallbladder disease was caused by her accident, which the Court cannot do. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   April 21, 2020.**

s/ *Reona J. Daly*
**REONA J. DALY**
**U.S. MAGISTRATE JUDGE**